# AFFIDAVIT

I, Adam Chetwynd, being sworn, depose and state as follows:

1) I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been so employed for the past fourteen years. Presently I am assigned to the Burlington, Vermont Resident Office. In connection with my duties and responsibilities as a DEA Special Agent, I have received extensive training in narcotics investigation and enforcement, and have participated in investigations relating to the possession, distribution and manufacturing of various controlled substances, including cocaine base and heroin. I have personally seized suspected heroin and cocaine base, which was subsequently confirmed to be those substances by laboratory analysis.

2) I submit this affidavit to show probable cause to believe that on or about September 14, 2018, Rashawn GRIER committed the offense of possession with intent to distribute heroin, a schedule I controlled substance, and 28 grams or more of cocaine base, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a) and 841(b)(1)(B).

3) The information contained in this affidavit comes from my personal observations and knowledge, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.

## Probable Cause

4) On September 14, 2018, law enforcement executed the search warrant at a known location in Milton, Vermont (hereinafter referred to as "the Milton residence"). This residence is a single family home, accessible by a driveway. I was present for the execution of this search

warrant. Upon entry to the residence, law enforcement encountered three people, who were detained while the residence was secured. A search of the residence revealed approximately 480 bags of suspected heroin, approximately 61 grams of suspected cocaine base, and approximately $3,000 cash. The heroin bags were stamped with the word "Hulk."

5) One of the residents, hereafter referred to as CI,[1] agreed to assist law enforcement in exchange for potential leniency from the government. I did not make CI any promises about the benefits of his cooperation, but did assure CI I would relay his cooperation to the prosecutor of his case. CI stated that it had obtained the drugs in the residence from "G." CI stated that "G" was due back later on September 14, 2018. CI described "G" as a black male between 6'1" and 6'3", skinny, with close cropped hair, who had a recent surgery on his left elbow with pins. CI agreed to place recorded phone calls to "G" and arrange for a delivery of additional quantities of cocaine base and heroin. In the presence of law enforcement, CI placed a call to "G" using a cellular telephone number labeled "G-boy." In the call, CI requested that "G" bring "3 and 100" later that day. CI informed me that "G" would arrive driving a small black sedan with out-of-state tags (possibly New York), and he would arrive alone. CI informed me that "G" would arrive to the driveway in the house, loop and park adjacent to the garage and rear doors of the residence. At approximately 7:28pm, "G" texted CI's phone and stated "12 min."

6) At approximately 7:50pm on September 14, 2018, a black Nissan Altima with Pennsylvania plates arrived at the Milton residence, and parked in the manner previously

---

[1] CI's criminal record is lengthy. CI's criminal convictions include the following: disorderly conduct, petty larceny, possession of a regulated drug, disorderly conduct, unlawful trespass, conspiracy to distribute cocaine, driving with a suspended license, violation of a restraining order, simple assault, aggravated domestic assault, violation of conditions of release, possession of a firearm by a convicted felon, possession with intent to distribute controlled substances (x2), and conspiracy to distribute heroin. Due to the length of the criminal record, some convictions may have been inadvertently omitted from this list.

described by CI. The driver was alone in the vehicle, matching the description provided by CI. Law enforcement immediately surrounded the vehicle, and ordered the driver (later identified as Rashawn GRIER from his driver's license) out of the vehicle. GRIER was observed to have a cellular phone on his lap prior to his exiting the vehicle. This phone was seized by law enforcement. A phone call was placed to the number used by CI to communicate with "G." Upon the phone number being dialed, the phone I seized from GRIER rang.

7) A search of GRIER's vehicle resulted in the seizure of approximately 3 ounces of cocaine base, approximately 980 bags of suspected heroin that were stamped "Hulk," and approximately $2,000 of cash.

8) I have personally examined the suspected cocaine base and heroin seized from GRIER's residence. Based on my training and experience, the suspected cocaine base is consistent is in appearance with what I know to be cocaine base, specifically a white, rock-like substance. Further, the suspected heroin is packaged in a manner consistent with the way heroin is typically packaged for sale, specifically in white bags commonly called "tickets." The amount of cocaine base and the amount of heroin seized from GRIER is consistent with the intent to distribute, and inconsistent with quantities for personal use.

### Conclusion

9) Based on the foregoing, I believe probable cause exists to believe that on or about September 14, 2018, Rashawn GRIER committed the offense of possession with intent to distribute heroin, a schedule I controlled substance, and 28 grams or more of cocaine base, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a) and 841(b)(1)(B).

Dated at South Burlington, in the District of Vermont, this 14th day of September, 2018.

_____
ADAM CHETWYND
DEA Special Agent


Sworn and subscribed before me this 14th day of September, 2018.

_____
HONORABLE JOHN M. CONROY
United States Magistrate Judge